IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| AWP, INC., ) | |
|        Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No.: 5:13-cv-00031-MFU |
| COMMONWEALTH EXCAVATING, ) | |
| INC., ) | |
| ) | |
| and ) | |
| ) | |
| IRA BIGGS, ) | |
|        Defendants. ) | |

**PLAINTIFF AWP, INC.'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

COMES NOW Plaintiff AWP, Inc. ("Plaintiff" or "AWP"), by counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6) and submits its Brief in Opposition to the Motion to Dismiss filed by Commonwealth Excavating, Inc. ("Commonwealth") and Ira Biggs ("Mr. Biggs") (collectively "Defendants").

**STATEMENT OF THE CASE**

AWP is a national leader in the traffic control business; it employs more than 1,000 people in 17 states. (Compl. ¶¶8-9.) This matter stems from the actions of a former Regional Sales Manager for AWP named Shawn Watkins. (Compl. ¶17.) While he still worked for AWP, Mr. Watkins formed a competitor to AWP, which he called Traffic Control Solutions, LLC ("TCS"), and used AWP's trade secrets, confidential and proprietary information, equipment and employees to compete with AWP. (Compl. ¶¶ 23-30.) When AWP learned about Mr. Watkins actions, AWP and Mr. Watkins negotiated a settlement whereby Mr. Watkins agreed, among other things, to shut down TCS and to enter into an agreement not to compete with AWP, not to

provide any consulting services to AWP's competitors, not to solicit AWP's customers and not to assist anyone else in the solicitation of AWP's customers. (Compl. ¶¶31-36.)

As he was negotiating this settlement agreement, Mr. Watkins also contacted Mr. Biggs and Commonwealth, which had recently attempted to expand from the excavating business into the traffic control business, to see if Defendants would purchase his customers and equipment. (Compl. ¶¶ 5, 38.) Among other improper acts, Defendants knowingly agreed to purchase AWP's trade secrets and confidential and proprietary information, offered to hire Mr. Watkins despite his noncompete obligations, and enlisted Mr. Watkins to consult for them and to assist in the solicitation of business from AWP clients. (Compl. ¶¶38-53.)

AWP's Complaint against Defendants contains a more detailed summary of these events and alleges causes of action against Defendants for civil and statutory business conspiracy, misappropriation of trade secrets, tortious interference with a contract or business relations and unjust enrichment. In the face of the extensive allegations of wrongdoing, Defendants moved the Court to dismiss AWP's Complaint for failure to state a claim upon which relief can be granted. To survive such a motion, a complaint must only provide fair notice of what the claim is and the grounds upon which it rests; it need only provide enough factual allegations to make a right to relief "plausible." AWP's Complaint contains extensive factual allegations that provide fair notice and suggest facial plausibility for each of AWP's claims against Defendants. Defendants' Motion to Dismiss should, therefore, be denied.

## ARGUMENT

### 1.    Standard of Review.

Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the

statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007*)*; *E. I. du Pont de Nemours & Co. v. Kolon Indus.,* 637 F.3d 435, 440 (4th Cir. 2011). To survive a Rule 12(b)(6) motion to dismiss, a complaint must only establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Finally, for purposes of a Rule 12(b)(6) motion, the Court must assume that all well-pleaded nonconclusory factual allegations in the complaint are true and must draw all reasonable inferences in favor of the plaintiff. *Erickson,* 551 U.S. at 94; *E. I. du Pont de Nemours & Co.,* 637 F.3d at 190.

    **2.**    **AWP's Complaint Adequately States a Claim for Civil Conspiracy and Statutory Business Conspiracy (Counts I and II).[1]**

Plaintiff argues that AWP's civil and statutory business conspiracy claims should be dismissed because AWP has not alleged sufficient facts upon which its claims for damages can be based. (Defs.' Mot. ¶ 3.) More specifically, Defendants argue that AWP "fails to allege" that Defendants' solicitations of AWP's customers were successful, that Defendants secured work

---

[1] To the extent Defendants also argue that Counts III to V should be dismissed on this basis, AWP submits that they should not. In addition to the fact that AWP has sufficiently alleged damages for those claims, several of AWP's claims do not require a demonstration of actual damages. For instance, a trade secret violation contains only two statutory elements, "namely, the existence of a 'trade secret' and its 'misappropriation' by the defendant." *Collelo v. Geographic Servs*., 727 S.E.2d 55, 60, 2012 Va. LEXIS 12, *15 (Va. 2012) (unpublished opinions attached as **Exhibit A**). Once misappropriation is established, the Trade Secrets Act allows compensation for both actual damages and unjust enrichment. *Id.,* at 62 *(citing* Va. Code § 59.1-338). It also allows injunctive relief. Va. Code §59.1-337. Defendants' separate claim that AWP did not allege a trade secret claim is addressed in paragraph 5, below. Similarly, unjust enrichment claims, by their nature, do not require damages to the plaintiff but an unjust benefit to the defendant. Defendants' separate argument that AWP did not allege an unjust benefit is addressed in paragraph 7, below. Finally, Defendants ' separate claim that AWP did not allege a tortious interference claim is addressed in paragraph 6, below.

3

and/or contracts from these customers, and/or that AWP lost such work and/or contracts as a result of any such alleged meetings or solicitations. (Defs. Mot. ¶ 3.)

A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff. *Glass v. Glass,* 228 Va. 39, 46 (1984). A statutory business conspiracy occurs when "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act." Va. Code §§18.2-499(A) & -500.

In determining whether the plaintiff has alleged sufficiently the elements of a conspiracy claim, the Court should consider the Complaint as a whole. *All Bus. Solutions, Inc. v. NationsLine, Inc.,* 629 F. Supp. 2d 553, 557-558 (W.D. Va. 2009). In this case, AWP has alleged that two or more persons were involved in the conspiracy–Mr. Watkins, Mr. Biggs and Commonwealth. (Compl. ¶ 56.) It has alleged that they acted together. (Compl. ¶¶ 38-53.) AWP has further alleged that Mr. Watkins agreed to sell AWP's trade secrets and AWP's confidential and proprietary information, agreed to help Defendants develop relationships with AWP customers, and that Mr. Watkins and Defendants consummated this deal and worked together to steal the business from AWP. (Compl. ¶¶ 38-53.)

AWP also has alleged the purpose of Defendants' conspiracy with Mr. Watkins was to accomplish an unlawful purpose and/or to accomplish a lawful purpose by unlawful means, For instance, AWP alleges that the Defendants knowingly accomplished the unlawful transfer of AWP's trade secrets and confidential and proprietary information. (*See, e.g.,* Compl. ¶ 47.) It

4

alleges that the Defendants knowingly acted together to cause Mr. Watkins to violate his non-compete agreement. (Compl. ¶¶ 43-53.) Likewise, AWP alleges that the Defendants accomplished a lawful purpose (attempting to sell to AWP's customers) by unlawful means---using improperly obtained trade secrets and other confidential and proprietary information and by knowingly violating the non-compete agreement. (Compl. ¶¶ 38-53.)

Likewise, AWP has alleged sufficient facts to support its statutory business conspiracy claim. Again, AWP alleges that the conspirators were Mr. Watkins, Mr. Biggs and Commonwealth. (Compl. ¶ 65.) It alleges that the conspirators acted in concert: (1) to effect the unauthorized transfer of AWP's trade secrets and confidential and proprietary information; (2) to cause Mr. Watkins to violate his non-compete agreement; (3) and to attempt to steal business from AWP using the trade secrets and confidential and proprietary information and by violating Mr. Watkins non-compete. (Compl. ¶¶ 38-53.) AWP also alleges that Defendants undertook these actions to willfully and maliciously injure the AWP in its reputation, trade, business or profession. Moreover, in addition to the detailed factual background underlying the conspiracy set forth in paragraphs 38-53 of the Complaint AWP specifically alleged that Defendants and Mr. Watkins took these actions for the purpose of "willfully and maliciously injuring AWP in its business." (Compl. ¶ 65.) For these reasons, AWP has alleged sufficient facts for the court to draw a reasonable inference that Defendants are liable or that AWP's claim is "facially plausible." *Iqbal,* 556 U.S. at 678; *Erickson,* 551 U.S. at 93.

AWP's Complaint also contains sufficient factual allegations regarding the damages it has suffered as a result of Defendants' conspiracies. For instance, AWP alleges it "suffered damages associated with the loss of business and injury to AWP's reputation and goodwill." (Compl. ¶ 58.) It also alleged that it "suffered damages associated with loss of business, loss of

5

customers, and injury to AWP's reputation and business good will and customers in light of the conspirators' unlawful acts." (Compl. ¶ 66.) Elsewhere, it alleged that Defendants "diverted" work from AWP to Defendants. These allegations follow AWP's assertions that Mr. Watkins stated to Mr. Biggs and Mr. Boxler that "he believed Commonwealth could secure business from these customers by using AWP's Trade Secrets and other confidential and proprietary information to underbid AWP," and that Defendants "*accepted* these customers with knowledge that they were obtained by using confidential and proprietary information misappropriated from AWP." (Compl. ¶41 (emphasis added).)

In light of these allegations, which must be accepted as true, and drawing all reasonable inferences in favor of AWP, the Complaint, in its entirety, sets forth sufficient factual content regarding the elements of the conspiracy claims to suggest that the claims are "facially plausible." *Iqbal,* 556 U.S. at 678; *All Bus. Solutions, Inc.,* 629 F. Supp. 2d at 557-558. As such, Defendant's motion to dismiss the conspiracy claims should be denied.

**3.    The Intra-corporate Immunity Doctrine Does Not Bar AWP's Conspiracy Claims.**

Defendants next claim that no conspiracy is possible between Mr. Biggs and Commonwealth based on the intra-corporate immunity doctrine. (Defs. Mot. ¶ 4.) The doctrine of intra-corporate immunity provides that since a corporation can act only through its agents, officers and employees, a "conspiracy" between a corporation and agents of the corporation acting within the scope of their employment is a legal impossibility. *Griffith v. Electrolux Corp.,* 454 F. Supp. 29, 32 (E.D. Va. 1978). However, a cause of action for conspiracy can be maintained where at least one participant in the alleged conspiracy is not a party to the contract.[2]

---

[2] It also can be inferred from the Complaint that the doctrine does not apply because Mr. Biggs had an independent personal stake in the conspiracy. *See., e.g., Buschi v. Kirven,* 775 F.2d 1240, 1252 (4th Cir. Va. 1985).

*Id.* (citing *Stauffer v. Fredericksburg Ramada, Inc.,* 411 F. Supp. 1136, 1138-39 (E.D. Va. 1976)). AWP alleges that Defendants conspired with Mr. Watkins. (Compl. ¶¶56, 65.) And the Complaint contains numerous factual allegations as to how Mr. Biggs and Commonwealth acted in concert with him. (Compl. ¶¶ 38-53; *see also* paragraph 3, above.) Because AWP has alleged that Mr. Watkins also was involved in the conspiracy, the intra-corporate immunity doctrine does not apply.

The fact that Mr. Watkins is not named as a Defendant in this case does not prevent AWP's conspiracy claims against Mr. Biggs and/or Commonwealth. *See, e.g., Foster v. Wintergreen Real Estate Co.*, 84 Va. Cir. 5, 8, 2011 Va. Cir. LEXIS 209, *8-9 (Nelson 2011) (conspiracy claims permitted to proceed where the named defendants, who qualified for the intra-corporate immunity doctrine, conspired with a non-defendant third party).

For these reasons, the intra-corporate immunity doctrine does not preclude the conspiracy claims in this case and this portion of Defendants' Motion to Dismiss should be denied.

**4.      AWP's Complaint Adequately States a Claim for Misappropriation of Trade Secrets (Count III).**

A trade secret violation contains only two statutory elements, "namely, the existence of a 'trade secret' and its 'misappropriation' by the defendant." *Collelo*, 727 S.E.2d 55, 60, 2012 Va. LEXIS 12, *15. Defendants argue that AWP's misappropriation of trade secrets claim should be dismissed because the Complaint does not contain "facts constituting any 'misappropriation' of any 'trade secret' using 'improper means' as those terms are defined in the Virginia Uniform Trade Secrets Act…" and because the Complaint does not "sufficiently identify" any "trade secret."(Defs. Mot. ¶ 5.) This argument is without merit. The Complaint is replete with just such information.

7

### A. AWP Sufficiently Identified "Trade Secrets."

AWP has identified specific information as "trade secrets." Virginia Code § 59.1-336 defines "trade secret" as:

> ...information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> 2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

In its Complaint, AWP identified numerous types of information it claims to be trade secrets, including "the identity, particular needs and issues of its customers, pricing, and its protocols and methodologies for traffic control." (Compl. ¶12.) Courts have recognized each of these categories as proper subjects for trade secrets under appropriate circumstances. *MicroStrategy, Inc. v. Business Objects, S.A.,* 331 F. Supp. 2d 396, 416 (E.D. Va. 2004); *see also*, *International Paper Co. v. Gilliam,* 63 Va. Cir. 485, 490 (Roanoke 2003)(pricing information that might inform a competitor who customers were, how to reach them, and exactly what each customer demands at what price, as well as customer service systems, were trade secrets).

AWP also alleges that the information that it identified as trade secrets has independent economic value. Specifically, AWP alleges that it "derives independent economic value from this information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." (Compl. ¶ 12.) It also alleges that it would be severely difficult to reproduce this information. (Compl. ¶ 16.)

8

AWP also alleges that "disclosure of such materials to a competitor of AWP would be damaging to AWP's business and financial interest, as well as its experience, goodwill and reputation with its customers. (Compl. ¶ 19.) The damaging effect of disclosure is underscored by the allegations in the Complaint that TCS was able to use this information to obtain business from AWP customers. (Compl. ¶¶29-30.) Finally, the complaint contains specific allegations that AWP has made reasonable efforts to maintain the secrecy of its trade secrets, including limiting the distribution of customer identities and pricing information. (Compl. ¶¶ 12-16, 73, 76.)

AWP has alleged sufficient facts to suggest the information at issue constitutes trade secrets. Whether the information actually constitutes trade secrets is a "fact-intensive question" for trial rather than an issue for a motion to dismiss. *GTSI Corp. v. Wildflower Int'l, Inc.,* 2009 U.S. Dist. LEXIS 36618, *16 (E.D. Va. Apr. 30, 2009) (quoting *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 419 (4th Cir. 1999)). In sum, at this juncture, taking AWP's allegations as true and drawing all inferences in its favor, as the Court must, AWP's allegations are sufficient to withstand a Motion to Dismiss. (Comp. ¶12.)

### B. AWP Sufficiently Alleged That Its Trade Secrets Were Misappropriated.

AWP's Complaint also includes specific, factual allegations that its trade secrets were misappropriated by Defendants. Virginia Code §59.1-336 defines "improper means" and "misappropriation" as follows:

> *"Improper means"* includes theft, bribery, misrepresentation, use of a computer or computer network without authority, breach of a duty or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.
>
> *"Misappropriation"* means:

9

    1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

    2. Disclosure or use of a trade secret of another without express or implied consent by a person who

      a. Used improper means to acquire knowledge of the trade secret; or

      b. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was

        (1) Derived from or through a person who had utilized improper means to acquire it;

        (2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

        (3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

        (4) Acquired by accident or mistake.

The facts alleged in the Complaint suggest several methods by which Defendants "misappropriated" AWP's trade secrets. The Complaint alleges:

- Mr. Watkins first approached Defendants and informed them that he had left his employment at AWP and was willing to sell AWP's trade secrets to them. (Compl. ¶¶ 38-39.)

- Mr. Biggs told Mr. Watkins that he knew TCS must have taken its customers from AWP using AWP's trade secrets and that Defendants accepted these customers knowing they had been obtained using AWP's trade secrets. (Compl. ¶¶ 40-41.)

- Mr. Watkins "offered to teach Mr. Biggs and Commonwealth how to … use AWP's Trade Secrets and confidential and proprietary information to price jobs and undercut and underbid AWP." (Compl. ¶ 43.)

- Mr. Watkins informed Mr. Biggs on January 4, 2013 that he was subject to a non-compete agreement. (Compl. ¶¶ 43-45.)

- Several conversations between Mr. Watkins, Mr. Biggs and Defendants' counsel regarding the implications of Mr. Watkins non-compete agreement and counsel's advice that Defendants abandon their plans to purchase TCS' assets, as well as Mr. Biggs' response that he did not need to listen to his counsel and that Defendants would proceed with the agreement to obtain AWP's stolen trade secrets. (Compl. ¶¶ 43-45.)

10

- The consummation of the deal on January 11, 2013 and Mr. Watkins' agreement to deliver "…AWP's Trade Secrets and other confidential and proprietary information including AWP'S customers, customer leads, costs and pricing and its policies and practices regarding competitive bidding" to Defendants. (Compl. ¶¶ 47-48.)

- Defendants, with the assistance of Mr. Watkins, used this information to seek business from AWP customers. (Compl. ¶¶ 46, 49-51, 53.)

The first "plausible" scenario by which these allegations suggest AWP's trade secrets were "misappropriated" as that term is defined by the VUTSA is under paragraph 1 of the definition of "misappropriation." AWP's allegations support a claim that Defendants "misappropriated" the trade secrets of AWP by acquiring the trade secrets when they knew or had had reason to know that Watkins/TCS had obtained the trade secrets by improper means (*i.e.,* stolen/improperly retained by Mr. Watkins) and that they were obtaining the trade secrets by inducing Mr. Watkins to breach both a legal duty to maintain its secrecy (as a former employee) and/or a contractual duty to maintain its secrecy (the non-compete agreement).[3] (Compl. ¶¶ 38-48.) This is a plausible violation of Section 1 of the definition of "misappropriation."

Alternatively, under the second prong of the definition of "misappropriation," the allegations support a plausible claim that Defendants used AWP's trade secrets to seek business from four AWP customers without AWP's consent knowing that: (a) the trade secrets were derived from or through a person (Mr. Watkins) who had utilized improper means (again stolen when he left AWP) to acquire it in violation of Section 2(b)(1) of the definition of

---

[3]Former employees have a duty to their former employers "not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty." *Peace v. Conway,* 246 Va. 278, 281-82 (1993) (quoting RESTATEMENT (SECOND) OF AGENCY § 396 (1958)).

"misappropriation;" and/or (b) the trade secrets were derived from or through a person (Mr. Watkins) who owed a duty to the person seeking relief (AWP) to maintain its secrecy or limit its use (due to his duty to maintain the secrets of his former employer, AWP, and his non-compete agreement with AWP) in violation of Section 2(b)(3) of the definition. (Compl. ¶¶ 38-53.)

In sum, the Complaint contains numerous allegations that Defendants knew, at the time they obtained and used the trade secrets, that the information it was getting from Mr. Watkins had been obtained from AWP by improper means. The Complaint also contains detailed allegations that Defendants knowingly took advantage of AWP's trade secrets to seek business from four AWP customers. These detailed factual allegations support a plausible claim that Defendants' "misappropriated" AWP's "trade secrets." As such, Defendants' Motion to Dismiss Count III should be denied.

5.  **Counts I, II, IV, and V Are Not Preempted By The Virginia Uniform Trade Secrets Act (VUTSA), Va. Code § 59.1-336, et seq.**

Plaintiff next claims that Va. Code § 59.1-341, which provides that the VUTSA displaces conflicting civil remedies for misappropriation of a trade secret, preempts AWP's causes of action for common law conspiracy (Count I), statutory business conspiracy (Count II), tortious interference with contract or business relationship (Count IV), and unjust enrichment (Count V). (Defs. Mot. ¶ 6.) Plaintiff ignores settled authority that this section does not preempt *alternative* theories of recovery or causes of action that are not entirely dependent on the alleged misappropriation of trade secrets.

Unless it can be clearly discerned that the information in question constitutes a trade secret, a court should not dismiss alternative theories of relief as preempted by the VUTSA. *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.,* 191 F. Supp. 2d 652, 659 (E.D. Va. 2002); *see also, Beacon Wireless Solutions, Inc. v. Garmin Int'l, Inc.,* 894 F. Supp. 2d 727, 2012

U.S. Dist. LEXIS 65218, *27-31 (W.D. Va. 2012) (unjust enrichment claim was not preempted by VUTSA where the benefit bestowed upon the defendants included trade secrets, information that did not rise to the level of a trade secret and "ancillary services" that the plaintiff provided to the defendant); *Combined Ins. Co. of Am. v. Wiest,* 578 F. Supp. 2d 822, 834 (W.D. Va. 2008) (claim for tortious interference with contractual and/or prospective business relations not preempted by § 59.1-341). Thus, where the parties dispute whether allegedly misappropriated confidential information constitutes trade secrets, a court should not find alternative claims preempted by the act. *Stone Castle Fin., Inc.,* 191 F. Supp. 2d at 659. In their Motion to Dismiss, Defendants argue that AWP has failed to sufficiently identify any "trade secrets." Since Defendants dispute whether any of the confidential information referenced in the Complaint (*e.g.,* pricing information, customer identities and contacts, traffic control methodologies, competitive bidding practices and policies, etc.) are actually trade secrets, it is axiomatic that AWP's other claims should not be dismissed on the basis that they are preempted by Section 59.1-341.

Additionally, the preemption provision of the VUPTA explicitly allows other civil remedies that are not based upon misappropriation of a trade secret. Va. Code § 59.1-341 Counts I, II, IV and V are not dependent on trade secrets.

For instance, AWP's conspiracy claims (Counts I and II) contain allegations that they are also based on Defendants use and disclosure of "confidential and proprietary information." (Compl. ¶¶ 57, 64.) Likewise, tortious interference claims (Count IV) may be based on improper actions that are not, in and of themselves, tortious or illegal, such as unfair competition or unethical conduct. *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.,* 254 Va. 408, 414 (1997)(citing *Duggin v. Adams*, 234 Va. 221, 228 (1987)). The Complaint contains no shortage

13

of allegations of unethical conduct by Defendants. (Compl. ¶¶ 38-53.) It also contains the allegation that Defendants improper actions involved more than AWP's trade secrets to interfere with AWP's contracts or business relations, including the allegation they used AWP's "confidential information" (as opposed to trade secrets). (Compl. ¶ 86.)

Finally, with respect to its unjust enrichment claim (Count V), AWP's Complaint alleges that Defendants benefited from AWP's trade secrets *and* from AWP's "confidential information, employees, equipment, and diversion of work to Defendants." (Compl. ¶ 96.) This allegation, combined with the extensive factual allegations, supports an unjust enrichment claim that is independent from AWP's trade secrets claim.

The VUTSA does not preempt AWP's alternative claims or claims that are not entirely dependent on trade secrets; therefore, paragraph 6 of Defendants' Motion to Dismiss should be denied.

**6.      AWP's Complaint Adequately States a Claim for Tortious Interference (Count IV).**

Defendants also claim that AWP's claim for tortious interference with a contract or business relationship (Count IV) should be dismissed for failure to state a claim. (Defs. Mot. ¶ 7.) To establish a *prima facie* case for tortious interference, a plaintiff must show that: (1) it had a contract or contract expectancy; (2) the defendant knew of the contract or expectancy; (3) the defendant intentionally interfered with the contract or expectancy; (4) the defendant used improper means or methods to interfere with the contract or expectancy; and (5) the plaintiff suffered a loss as a result of the disruption of the contract or expectancy. *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.,* 254 Va. 408, 414 (1997). The improper means need not be illegal or tortious, just intentional and improper under the circumstances. *Id.*

AWP has stated a claim for tortious interference. The Complaint identifies four customers with whom AWP had ongoing relationships or expectancies--Lumos, Rockingham, Rappahannock and Shenandoah. (Compl. ¶¶ 46, 49-51, 53, 83.) AWP also alleges Defendants knew about these relationships and knowingly and intentionally set out to interfere with the relationships using improper means, including trade secrets, confidential and proprietary information, and the assistance of an employee they knew was subject to a non-compete agreement. (Compl. ¶¶ 38-53, 84-86.) Finally, AWP alleges that it suffered damages, including loss of business, as a result. (Compl. ¶¶ 86-87.) These factual allegations are sufficient to state a claim for tortious interference, and Defendants Motion to Dismiss this claim should be denied.

**7.**  **AWP's Complaint Adequately States a Claim for Unjust Enrichment (Count V).**

Virginia law supplies the equitable remedy of unjust enrichment to ensure "that a man shall not be allowed to enrich himself unjustly at the expense of another." *Kern v. Freed Co., Inc.*, 224 Va. 678, 681, 299 S.E.2d 363, 365 (1983) (citing *Rinehart v. Pirkey,* 126 Va. 346, 351, 101 S.E. 353, 354 (1919)). The law implies a promise to pay for goods received and for services rendered when a party is unjustly enriched at the expense of another. *See Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985, 993 (4th Cir. 1990) (citing *Kern,* 224 Va. at 680, 299 S.E.2d 363, 365); *Marine Dev. Corp. v. Rodak*, 225 Va. 137, 142, 300 S.E.2d 763, 766 (1983)). To state a claim for unjust enrichment, a plaintiff must allege: (1) the conferral of a benefit conferred on the defendant; (2) knowledge by the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value. *Nossen v. Hoy*, 750 F. Supp. 740 (E.D. Va. 1990).

The Complaint is replete with factual allegations showing that Defendants knowingly received a benefit under circumstances making the acceptance and retention of the benefit without paying AWP inequitable. AWP alleges that Defendants met with Mr. Watkins on several occasions in late 2012 and early 2013 to discuss a transfer of trade secrets, confidential information, employees, equipment, and customers unlawfully taken by Mr. Watkins from AWP to be transferred to Defendants. (Compl. ¶¶ 38-53.) Mr. Watkins proposed an illicit deal: in exchange for Mr. Biggs hiring TCS's employees, "Mr. Watkins would identify for Mr. Biggs and Commonwealth AWP's customers, customer leads, pricing and costs, and policies and practices with respect to competitive bidding." (Compl. ¶ 39.) The Complaint alleges that Defendants and Mr. Watkins executed this deal on or about January 11, 2013, when Defendants agreed to receive the Trade Secrets and confidential and proprietary information Mr. Watkins had stolen from AWP, as well as receive Mr. Watkins' assistance to secure the business of former and current AWP customers for Defendants' benefit using AWP's information. (Compl. ¶ 47.) The Complaint specifically alleges that Mr. Watkins disclosed this information to Defendants and conducted several meetings introducing Defendants to AWP customers who Mr. Watkins and TCS had stolen from AWP using confidential and proprietary information and/or were attempting to steal from AWP for Defendants using confidential and proprietary information. (Compl. ¶¶ 48-51, 53).

AWP also sufficiently alleges that Defendants knew they were receiving a benefit under circumstances rendering it inequitable for Defendants to receive without proper compensation. AWP alleges that it "operates in a highly competitive industry in which the protection of customer goodwill, trade secrets and confidential business information is of critical importance." (Compl. ¶ 11.) AWP also establishes that it "derives independent economic value from [its]

16

Trade Secrets not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from [their] disclosure or use." (Compl. ¶ 12.) The Complaint specifically alleges that from the first contact with Mr. Watkins, Defendants knew Mr. Watkins and TCS had improperly used AWP's Trade Secrets and confidential and proprietary information. (Compl. ¶ 38-39.) With this knowledge, Defendants agreed to pay $45,000.00 to Mr. Watkins and/or TCS and to hire four (4) former AWP employees from TCS in exchange for AWP's Trade Secrets and confidential and proprietary information, and for Mr. Watkins assistance in securing the business of current and former AWP customers using this information. (Compl. ¶ 47.) Defendants also offered to hire Mr. Watkins for $85,000.00 per year and to "hide" him in Commonwealth's excavating business, further indicating Defendants knew they were receiving benefits worthy of reasonable compensation. (Compl. ¶ 52.)

Accepting the facts alleged in the Complaint as true and making all reasonable inferences in favor of AWP, the Complaint establishes that Defendants knowingly received the benefit of AWP's Trade Secrets and other confidential information without any compensation to AWP. Defendants' payment and offers of payment to Mr. Watkins further show that Defendants knew they received a benefit for which it would be inequitable to retain without reasonable compensation. Therefore, the claim for unjust enrichment is properly pled.

**8.      AWP's Prayer For Injunctive Relief Are Proper.**

AWP has not set forth a separate cause of action for injunctive relief and has not asked the Court to grant a temporary restraining order or, at this time, a preliminary injunction. The injunctive relief sought by AWP is a potential remedy for several of the causes of action asserted by AWP. Moreover, the VUTPA and the statutory business conspiracy statutes specifically allow for injunctive relief. Va. Code §§ 59.1-337 & 18.2-500(B). AWP would expect that any

such relief, if and when granted, will be tailored to fit the evidence ultimately presented to the Court.

**9.     AWP's Prayer For Attorneys' Fees Is Proper.**

Similarly, AWP has not set forth a separate claim for attorneys' fees. Attorneys' fees and costs are a potential remedy afforded by the statutes upon which AWP relies. The VUTSA provides attorneys' fees for bad faith or willful and malicious misappropriation of trade secrets. Va. Code § 59.1-338.1. The business conspiracy statute provides reasonable attorneys' fees to a plaintiff injured in his reputation, trade, business or profession by reason of a violation of the statute. Va. Code § 18.2-500(A). These remedies are not a separate cause of action and should not be dismissed.

**10.     AWP's Prayer for Punitive Damages Is Proper.**

Defendants' sole argument that AWP's request for punitive damages should be dismissed is Defendants' claim that AWP has failed to set forth any other cause of action. AWP has demonstrated above that its substantive claims sufficiently state causes of action on all counts. Therefore, Defendant's argument that AWP's request for punitive damages is moot and should be denied. AWP would further note that the VUTSA specifically allows for punitive damages in cases of willful and malicious misappropriation of trade secrets, which AWP has alleged. (Compl. ¶¶ 38-53, 81). *See* Va. Code § 59.1-338.

**11.     Alternatively, AWP Requests Leave to Amend To Rectify Any Deficiencies in its Complaint.**

Should the Court grant any portion of Plaintiff's Motion to Dismiss, AWP respectfully requests leave to amend the Complaint to address any deficiency. Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend be given freely when justice requires. *See also*, 2 – 12 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.34(1)(b) ("the

18

appropriate remedy when a complaint may not be liberally construed into adequacy is usually to order the plaintiff to amend the pleading, rather than actually dismissing it under Rule 12(b)(6)").

## CONCLUSION

For the foregoing reasons, Plaintiff AWP, Inc. respectfully submits that Defendants' Motion to Dismiss should be denied. Alternatively, should the Court grant any portion of Defendants' Motion, AWP requests leave to amend its complaint to correct any deficiencies.

**AWP, Inc.**

By: /s/ William P. Dunn

Carl H. Gluek (Ohio BarNo. 0029531)
William P. Dunn (Ohio Bar No. 0076078)
FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114
(216) 515-1660
(216) 515-1650 (Facsimile)
E-mail:cgluek@frantzward.com
         wdunn@frantzward.com

Steven D. Brown (VSB No. 42511)
J. Fielding Douthat, Jr. (VSB No. 46812)
LECLAIRRYAN, A PROFESSIONAL CORPORATION
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
Telephone: (804) 783-2003
Facsimile: (804) 783-2294

Attorneys for Plaintiff
AWP, Inc.

**Certificate of Service**

I hereby certify that on May 2, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification to the following: John C. Wirth, Nelson, McPherson, Summers & Santos, L.C., P.O. Box 1287, Staunton, VA 24402-1287.

/s/ William P. Dunn

William P. Dunn (Ohio Bar No. 0076078)
FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114