CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

JUL 24 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| AWP, INC. | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:13cv031 |
| | ) |
| v. | ) |
| | ) By: Michael F. Urbanski |
| COMMONWEALTH EXCAVATING, INC., | ) United States District Judge |
| | ) |
| and | ) |
| | ) |
| IRA BIGGS | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the court on a motion to dismiss filed by defendants Commonwealth Excavating, Inc. ("Commonwealth") and Ira Biggs ("Biggs"), president of Commonwealth. Plaintiff, Area Wide Protective, Inc. ("AWP"), filed this complaint alleging common law conspiracy, statutory business conspiracy pursuant to Virginia Code §§ 18.2-499 et seq., misappropriation of trade secrets under the Virginia Uniform Trade Secrets Act ("VUTSA"), Va. Code §§ 59.1-336 et seq., tortious interference with contract or business relationships, and unjust enrichment. Jurisdiction is founded on diversity of citizenship between AWP, an Ohio company with its principal place of business in Kent, Ohio, and defendants Biggs, a resident of Virginia, and Commonwealth, a Virginia corporation. 28 U.S.C. §1332. As AWP's complaint sufficiently states a claim upon which relief can be granted, the motion to dismiss is **DENIED**.

# I.

The complaint alleges the following facts. AWP is a national leader in comprehensive traffic control solutions for road construction sites and emergency situations. Shawn Watkins ("Watkins"), an unnamed co-conspirator, previously worked for AWP as a regional manager. Before leaving his job at AWP, Watkins began his own traffic control business, Traffic Control Solutions, LLC ("TCS"), using information Watkins obtained from his managerial position at AWP, including "the identity, particular needs and issues of its customers, pricing, and its protocols and methodologies for traffic control." Compl., Dkt. # 1, ¶ 12. AWP alleges that such information is protected as a trade secret. Additionally, the complaint alleges that Watkins improperly solicited four other AWP employees to leave AWP and join him at TCS.

AWP discovered Watkins' involvement with ACS in December 2012 and prepared to file a lawsuit against him, containing many of the claims alleged herein, plus claims of breach of fiduciary duty and conversion. Before suit was filed, however, Watkins and AWP resolved their differences, Watkins agreeing that he would cease operations of TCS immediately, never work with any of AWP's competitors in the future, and turn over all property of AWP, including any information in Watkins' possession, related to his employment there. Watkins also executed an affidavit stating that he was instrumental in the creation of TCS, that he had access to AWP's trade secrets, which AWP took appropriate steps to keep confidential, that he used AWP's trade secrets, equipment, and personnel without permission in order to purposefully underbid AWP on jobs and misappropriate AWP customers, that he wrongly possessed trade secrets on his personal laptop, and that he used various pieces of AWP equipment for the benefit of TCS. Id. at ¶ 37. Watkins agreed to shut down TCS by December 28, 2012.

While purporting to settle with AWP, the complaint alleges that Watkins surreptitiously approached Biggs, the president of AWP's competitor, Commonwealth, and offered to sell the information Watkins had taken from AWP and used to start TCS. The complaint alleges that Watkins and Biggs agreed to have Commonwealth take over at least four contracts with former AWP customers that Watkins had negotiated for TCS. AWP alleges that Commonwealth agreed to purchase the information and equipment Watkins took from AWP for $45,000 and hire the four TCS employees who left AWP to join TCS.

The complaint alleges that Watkins and Biggs met with the four former AWP customers whom Watkins had purloined for TCS and suggested that Commonwealth stand in TCS's shoes. The complaint does not state whether any of these customers accepted this offer. Biggs also offered Watkins an $85,000 salary to join Commonwealth, but Watkins declined for fear of violating his noncompete agreement.

## II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). While the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere

3

conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

### III.

Commonwealth and Biggs raise a number of arguments in their motion to dismiss. First, they argue that AWP's complaint fails to plead with particularity its allegations of business conspiracy. Defendants argue that AWP's business conspiracy allegations fail to meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure because AWP does not allege that AWP lost any business as a result of the alleged conspiracy. Second, defendants argue that the conspiracy claims are barred under the intracorporate conspiracy doctrine. Third, defendants argue that AWP's claims are preempted by the VUTSA. Fourth, defendants argue that the complaint fails to properly plead any nexus between the alleged tortious interference with AWP's customers and any resulting loss of business. Fifth, defendants argue that the complaint fails to properly plead all of the elements of an unjust enrichment claim because AWP does not allege with specificity what benefit defendants received at the expense of plaintiff. Finally, defendants object to the breadth of the injunction sought by AWP and take issue with the award of attorneys' fees or the availability of a punitive damages award.

### A.

In Virginia, a civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means. Hechler Chevrolet, Inc. v. Gen. Motors Corp., 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985) (citing Werth v. Fire Cos. Adjustment Bureau, 160 Va. 845, 855, 171 S.E. 255, 259 (1933)). The plaintiff must allege

that the defendants combined together to effect a "preconceived plan and unity of design and purpose, for the common design is the essence of the conspiracy." Bull v. Logetronics, Inc., 323 F. Supp. 115, 131 (E.D. Va. 1971) (citations omitted).

In order to survive a motion to dismiss, plaintiff must at least plead the requisite concert of action and unity of purpose in more than "mere conclusory language." Lewis v. Gupta, 54 F. Supp. 2d 611, 618 (E.D. Va. 1999) (citing Bowman v. State Bank of Keysville, 229 Va. 534, 331 S.E.2d 797, 802 (1985) (a conspiracy claim asserted in mere conclusory language is based on inferences that are not fairly and justly drawn from the facts alleged)). In other words, Virginia requires a plaintiff to allege "some details of time and place and the alleged effect of the conspiracy." Johnson v. Kaugars, 14 Va. Cir. 172, 176 (City of Richmond Cir. 1988) ("[I]t is not enough merely to state that a conspiracy took place."). Finally, "[t]he gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means." CaterCorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 28, 431 S.E.2d 277, 281-82 (1993) (citing Gallop v. Sharp, 179 Va. 335, 338, 19 S.E.2d 84, 86 (1942)).

The elements of a claim under the Virginia business conspiracy statute are specified in Virginia Code § 18.2–499.A, which provides as follows:

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever ... shall be jointly and severally guilty of a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2–500.

Virginia Code § 18.2–500.A provides the remedy:

> Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2–499, may sue therefor and recover three-fold the damages by him sustained, and

5

> the costs of suit, including a reasonable fee to plaintiff's counsel, and without limiting the generality of the term, "damages" shall include loss of profits.

Thus, to state a claim for statutory business conspiracy in Virginia, a plaintiff must show: (1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business; and (2) resulting damage to plaintiff. Va. Code § 18.2-499; Simmons v. Miller, 261 Va. 561, 578, 544 S.E.2d 666, 676 (2001); Scharpenberg v. Carrington, 686 F. Supp. 2d 655, 661 (E.D. Va. 2010).

In addition to Iqbal's plausibility requirement, allegations of "business conspiracy, like fraud, must be pleaded with particularity, and with more than 'mere conclusory language.'" Gov't Emps. Ins. Co. v. Google, Inc., 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (citation omitted). "[T]he circumstances to be pled with particularity [under Rule 9(b)] . . . are the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Feeley v. Total Realty Mgmt., 660 F. Supp. 2d 700, 712 (E.D. Va. 2009) (citation omitted); Scharpenberg, 686 F. Supp. 2d at 661-62. Similarly, a claim of business conspiracy does not comply with the specificity requirements of Rule 9(b) and must be dismissed where there are insufficient allegations from which to infer a meeting of the minds and not mere parallel conduct. Feeley, 660 F. Supp 2d at 713. "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. . . . Hence, when allegations of parallel conduct are set out in order to make a [conspiracy] claim, they must be placed in a context that raises a suggestion of a preceding agreement." Twombly, 550 U.S. at 556-57.

The complaint alleges a claim under the Virginia business conspiracy statute with sufficient particularity. AWP alleges that Watkins and Biggs met between Christmas and New

6

Year's Eve 2012, for the purpose of transferring TCS's business to Commonwealth. The complaint alleges that at that time Watkins knew that AWP and Commonwealth were competitors and agreed to introduce TCS's former customers to Commonwealth. Compl., Dkt. # 1, ¶¶ 38-39. Biggs and Commonwealth are alleged to have known that TCS obtained these customers by using confidential and proprietary information misappropriated from AWP. Id. at ¶ 40. AWP alleges particular places, dates, and times of the alleged meetings at which Watkins and Biggs schemed to use AWP's confidential information and trade secrets in order to undercut and underbid AWP on valuable contracts. During a breakfast meeting on January 4, 2013, Watkins agreed to share AWP's trade secrets, including customer lists, pricing information, policies and practices regarding competitive bidding, and other confidential and proprietary information, all of which defendants knew were taken from AWP. Id. at ¶¶ 40-43. Commonwealth and Biggs are also alleged to have known that Watkins was in breach of his noncompete agreement by virtue of these conversations and transactions. Id. at ¶¶ 44-45. The complaint alleges that Watkins and the defendants nonetheless agreed, on or about January 11, 2013, that Commonwealth would purchase from Watkins and TCS the trade secrets, confidential information, and equipment Watkins took from AWP for $45,000, and that Watkins would help Commonwealth secure the business of current and former AWP customers using this information. Id. at ¶ 47. The complaint alleges that Watkins and Biggs approached several of AWP's former customers, including Rockingham Construction, Lumos, Rappahannock Electric, and Shenandoah Valley Electric Cooperative, with offers that Commonwealth would honor each of their contracts with TCS, which Watkins had initially obtained by improperly using AWP's trade secrets and confidential information to underbid AWP. Id. at ¶¶ 49-53.

Plainly, these allegations are particular enough to state a claim under the Virginia business conspiracy statute and satisfy Rule 9(b). Although it is not specifically alleged whether Commonwealth secured the four customers Watkins and Biggs solicited using AWP's information, the complaint alleges that AWP suffered damages associated with loss of business, loss of customers, and injury to its reputation and business goodwill and customers. Id. at ¶ 66. AWP's allegations state a plausible claim and are sufficiently specific to survive a motion to dismiss.

**B.**

Next, defendants contend that the conspiracy claim is barred by the doctrine of intracorporate immunity. This doctrine is founded on the premise that proof of concerted action necessary to establish a conspiracy requires the involvement of at least two legally distinct persons or entities. See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769 (1984); Oksanen v. Page Mem'l Hosp., 945 F.2d 696, 702 (4th Cir. 1991). Under the doctrine, no conspiracy may exist between a corporation and its employees, nor can agents of a corporation acting within the scope of their agency conspire together. Such actors are not legally separate persons for purposes of the conspiracy statute, but rather form part of a single entity, the corporation, which cannot conspire with itself. See Phoenix Renovation Corp. v. Rodriguez, 258 F. App'x 526, 539 (4th Cir. 2007); Charles E. Brauer Co. v. NationsBank of Va., N.A., 251 Va. 28, 36, 466 S.E.2d 382, 387 (1996).

The intracorporate immunity doctrine cannot bar the claim alleged in this case. Although Watkins is not named as a defendant, the complaint alleges that he conspired with Biggs and Commonwealth between Christmas and New Year's Eve 2012, before he was alleged to have been offered a job at Commonwealth. Moreover, Watkins never accepted a position of

employment with defendants due to fear of violating his noncompete agreement. Compl., Dkt. # 1, ¶ 52. Watkins' participation in the conspiracy provides the multiplicity of actors necessary to state a claim for conspiracy. The analysis is not changed by the fact that Watkins is not named as a defendant in this case. It is axiomatic that not all members of a conspiracy must be named as parties to a lawsuit. See, e.g., Foster v. Wintergreen Real Estate Co., No. CL09000086, 2010 WL 8696177 (Nelson Cnty. Cir. Nov. 16, 2010) (demurrer to a claim of statutory conspiracy overruled because the complaint contained sufficient allegations that defendants, who were otherwise protected by the intracorporate immunity doctrine, conspired with an unnamed third party); Adeptech Sys., Inc. v. Federal Home Loan Mortg. Corp., No. 1:11CV383, 2011 WL 6820184 (E.D. Va. Dec. 28, 2011) (plaintiff sued defendant for statutory business conspiracy under Va. Code § 18.2-499 but did not name the alleged coconspirator as a party). As alleged in the complaint, Watkins, as an actor independent of defendants, met with Biggs and agreed to take actions in concert with Biggs and Commonwealth to the detriment of AWP. Clearly, intracorporate immunity does not bar the conspiracy allegations of this complaint at the motion to dismiss stage.

### C.

Defendants next argue that AWP has failed to sufficiently allege facts showing "misappropriation," "trade secrets," or "improper means" as those terms are defined under the VUTSA, Va. Code § 59.1–336. Under the VUTSA, "[i]n order for a plaintiff to establish that [its alleged trade secret] has been the subject of a trade secret violation, two statutory elements must be proved, namely, the existence of a 'trade secret' and its 'misappropriation' by the defendant." Collelo v. Geographic Servs., Inc., 283 Va. 56, 68, 727 S.E.2d 55, 60 (2012) (internal citations omitted).

9

The VUTSA defines "trade secret" as:

> [I]nformation, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> 2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code § 59.1–336.

The complaint alleges that the following are trade secrets of AWP: the identities of its customers, particular needs and issues of its customers, and protocols and methodologies for traffic control. AWP alleges that it took efforts maintain secrecy by limiting the number of employees that have access to the trade secrets and by maintaining customer information and pricing at the local level in order to minimize distribution of this information among AWP's employees. AWP alleges that it derives economic value from the information not being generally known to other persons, and alleges broadly that the disclosure of such would damage AWP's business and financial interests, as well as its experience, goodwill, and reputation with its customers. As such, the allegations meet the first statutory requirement of showing the existence of a trade secret.

The allegations of the complaint likewise plainly meet the misappropriation prong of the statute. The VUTSA defines misappropriation as:

> 1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> 2. Disclosure or use of a trade secret of another without express or implied consent by a person who

10

> a. Used improper means to acquire knowledge of the trade secret; or
>
> b. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was
>
> > (1) Derived from or through a person who had utilized improper means to acquire it;
> >
> > (2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;
> >
> > (3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
> >
> > (4) Acquired by accident or mistake.

Id.

A former employee has a duty not to reveal confidential information obtained through his employment, and not to use such confidential information after he has left his employment. Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 299 F. Supp. 2d 565, 575 (E.D. Va. 2004) (internal citations omitted). The complaint alleges that Watkins disclosed trade secrets to Biggs and Commonwealth and made defendants fully aware of his obligations to AWP under his noncompete agreement. Compl., Dkt. # 1, ¶¶ 39-41, 43-45. Plainly, the complaint alleges circumstances indicating that Biggs and Commonwealth knew Watkins' acquisition of the trade secrets was improper and that Watkins had a duty to maintain the secrecy of this information. The allegations of the complaint state a claim for theft of trade secrets under Virginia law.

Commonwealth and Biggs raise the preemption provision of the VUTSA, arguing that AWP's claims for common law and statutory conspiracy, tortious interference and unjust enrichment are preempted. Va. Code § 59.1-341 provides that the VUTSA "displaces conflicting

tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret." By its terms, the preemption provision does not affect contractual remedies, other civil remedies that are not based upon misappropriation of a trade secret, or criminal remedies. "The plain language of the preemption provision indicates that the law was intended to prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." Smithfield Ham & Prods. Co., Inc. v. Portion Pac, Inc., 905 F. Supp. 346, 348 (E.D. Va. 1995). According to Smithfield Ham, "the preemption provision is intended to preclude only those common law claims . . . premised *entirely* on a claim for misappropriation of a trade secret." 905 F. Supp. at 348 (emphasis in original) (internal citations omitted).

In Smithfield Ham, plaintiff alleged the misappropriation of its secret barbecue sauce recipe. In addition to pleading a VUTSA violation, plaintiff contended that defendant had tortiously interfered with its contracts and business relations because defendant had exploited knowledge it had about Smithfield's business in order to steal Smithfield's customers. On a motion for summary judgment, the court found that the tortious interference claims survived because, even if defendant was successful in showing that it had independently developed the recipe and therefore had not misappropriated a trade secret, plaintiff nevertheless had pled facts sufficient to "present a compelling argument that [the defendant's] misuse of inside information related to pricing, ingredients, and volume of business constituted tortious interference with their long-term contractual relationship and anticipated renewals." 905 F. Supp. at 350. The same is true in this case.

Moreover, although AWP has sufficiently alleged the existence of a trade secret, it has not yet proven its entitlement to relief under the VUTSA. As such, defendant's preemption argument is premature. See, e.g., Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co., Inc., 191 F. Supp. 2d 652, 659 (E.D. Va. 2002) (where the Eastern District concluded that "unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of relief as preempted by the VUTSA.").

Construing the complaint in the light most favorable to AWP, and considering that AWP alleges not only theft of trade secrets but conversion of AWP's equipment, misuse of other confidential business information which may not qualify as a trade secret, and improper solicitation of its customers and employees, the court cannot conclude at this time that preemption applies as a matter of law. The court in E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc., 688 F. Supp. 2d 443, 453 (E.D. Va. 2009), declined to dismiss a tortious interference claim at the motion to dismiss stage for this very reason, concluding as follows:

> It is well-established that "misappropriation of trade secrets" constitutes an improper method for interference with a contract or expectancy, but it is not the only one. Other improper methods of interference include misuse of inside or confidential information, breach of fiduciary relationships, and certain types of solicitation of employees. DuPont has alleged that "Kolon has used DuPont's *confidential information and trade secrets* to improve its process for producing aramid fiber." Compl. at ¶ 36. Hence, although DuPont's Complaint places its primary emphasis on Kolon's misappropriation of trade secrets, this conjunctive language, which is used throughout the Complaint, reveals that DuPont's claims are not *solely predicated* on the misappropriation of trade secrets (emphasis in original) (internal citations omitted).

Accordingly, proper consideration of the preemption issue must await further factual development.[1]

### D.

Defendants contend that the tortious interference count must be dismissed because the complaint does not indicate that Commonwealth was successful in capturing any of the four AWP customers solicited by Watkins, Biggs and Commonwealth. As summarized by the Virginia Supreme Court, the elements of tortious interference with contract are "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff." Glass v. Glass, 228 Va. 39, 51-52, 321 S.E.2d 69, 77 (1984) (citation omitted). See also Commerce Funding Corp. v. Worldwide Sec. Servs. Corp., 249 F.3d 204, 210 (4th Cir. 2001) (citing Chaves v. Johnson, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985)).

Defendants' reliance on Gov't Emps. Ins. Co. v. Google, 330 F. Supp. 2d 700 (E.D. Va. 2004), as support for the contention that the first element of tortious interference has not been sufficiently pled is misplaced, as the facts of that case are clearly distinguishable. There, the court held that plaintiff GEICO had failed to plead tortious interference with sufficient particularity because the allegation that Google interfered with GEICO's prospective economic

---

[1] The holding in S&S Computers & Design, Inc. v. Paycom Billing Servs., Inc., No. 5:00CV0058, 2001 WL 515260 (W.D. Va. Apr. 5, 2001), does not yield a contrary result. In S&S Computers, the counterclaimant conceded that the same allegations supported both its VUTSA and breach of fiduciary duty counterclaims. As a result, the court concluded that "Paycom's claim for breach of fiduciary duty is based on S&S's alleged misuse of Paycom's trade secrets." Id. at *3. In contrast, AWP's tortious interference and conspiracy allegations transcend its trade secret claims and, at least at this stage, have independent vitality. As such, the court cannot conclude that VUTSA preemption bars AWP's other business tort claims at this time.

advantage was founded upon mere speculation that some unidentified potential GEICO customers might instead do business with GEICO competitors because GEICO trademarks, when entered into the Google search engine, triggered the display of sponsored links to competitors' websites. The court in GEICO determined that "[b]cause GEICO's allegations are too broad and conclusory to plead a specific, existing contract or expectancy with a specific party, plaintiff's claim for tortious interference with prospective economic advantage will be dismissed." Id. at 705-706. In contrast to the speculative nature of the interference claimed by GEICO, AWP's relationships with the four customers solicited by Watkins and Biggs were far more concrete. Commonwealth and Biggs, aware of the relationship between AWP and these customers, nonetheless sought to exploit Watkins' use of inside information to underbid AWP. AWP alleges that there were "specific, existing contract(s) or expectanc(ies)" with these four "specific part(ies)" before TCS poached the contracts using misappropriated information from AWP, which contracts Commonwealth in turn agreed to honor. Moreover, the complaint asserts that defendants obtained AWP's confidential and proprietary information with the purpose of continuing to underbid AWP on important contracts in the hopes that Commonwealth would "be as big as AWP someday." Compl., Dkt. # 1, ¶ 47. As regards damages, AWP asserts that it has lost business and customers as a result of the tortious interference along with injury to its reputation and goodwill with the customers approached by defendants. These allegations are sufficient to state a claim for tortious interference, and the court does not consider the failure to identify a specific AWP customer lost to Commonwealth to be fatal to this claim at the pleading stage.

## E.

Defendants argue that plaintiff has failed to properly state a cause of action for unjust enrichment because the complaint is devoid of facts establishing that defendants received any benefit from plaintiff for which defendants reasonably should have expected to pay.

The cause of action for unjust enrichment rests "upon the doctrine that a man shall not be allowed to enrich himself unjustly at the expense of another." Rinehart v. Pirkey, 126 Va. 346, 101 S.E. 353, 354 (1919). In order to state a cause of action for unjust enrichment in Virginia, plaintiff must demonstrate the following three elements: "(1) [plaintiff] conferred a benefit on [the defendant]; (2) [the defendant] knew of the benefit and should reasonably have expected to repay [the plaintiff]; and (3) [the defendant] accepted or retained the benefit without paying for its value." Schmidt v. Household Fin. Corp., 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008). "To avoid unjust enrichment, equity will effect a contract implied in law, i.e., a quasi contract, requiring one who accepts and receives the services of another to make reasonable compensation for those services." Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 165 (4th Cir. 2012) (internal quotations and citations omitted). "[A] quasi-contract is not a contract at all but rather an equitable remedy thrust upon the recipient of a benefit under conditions where the receipt amounts to unjust enrichment." Nossen v. Hoy, 750 F. Supp. 740, 744 (E.D. Va. 1990).

As the Fourth Circuit in Rosetta Stone noted, "Virginia distinguishes between two types of implied contracts: contracts that are implied-in-fact and contracts that are implied-in-law." Id. at 166. While the former theory requires allegations that defendant promised to pay plaintiff for such benefit, an implied-in-law contract claim may lie where there is no meeting of the minds. Id.; see Norfolk v. Norfolk Cnty., 120 Va. 356, 91 S.E. 820, 823 (1917) ("It seems to be a principle of natural justice as well as law that, where one person has injured another, or

received compensation which in equity and good conscience belongs to another, he may be required by action to account to such other for injury done him.") (internal citation omitted); In re Bay Vista of Va., Inc., No. 2:09cv46, 2009 WL 2900040, at *5 (E.D. Va. June 2, 2009)("The fact that Defendants are alleged to have intentionally acted to improperly seize and retain such benefit, rather than such benefit being voluntarily *conferred* by Debtor, is inconsequential.")(emphasis in original). Under an implied-in-law theory, the failure to allege that Commonwealth or Biggs implicitly promised to pay AWP for use of its proprietary business information is not fatal to its claim. Id.

Here AWP has alleged facts supporting the general assertion that Commonwealth and Biggs should reasonably have expected to pay for the use of AWP's alleged trade secrets, confidential information, and equipment, particularly given the fact that the complaint asserts that defendants did in fact agree to pay Watkins $45,000 for this very information. The complaint further alleges that defendants knew that Watkins had misappropriated these benefits from AWP. Finally, the complaint alleges that Biggs and Commonwealth sought to exploit Watkins' inside information to underbid AWP. Plainly, the complaint sufficiently alleges that AWP conferred a benefit on defendants for which they should reasonably have expected to pay and that defendants never paid AWP for its value.

### F.

Defendants argue that the injunctive relief sought by plaintiff is too broad. The Fourth Circuit has addressed the appropriate scope of an injunction as follows:

> "It is well established that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." Kentuckians for Commonwealth v. Rivenburgh, 317 F.3d 425, 436 (4th Cir. 2003) (quoting Califano v. Yamasaki, 442 U.S. 682, 702, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979)). To be sure, "[a]n injunction should be carefully addressed

to the circumstances of the case." Virginia Soc'y for Human Life v. FEC, 263 F.3d 379, 393 (4th Cir. 2001) (citing Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 217 (4th Cir. 1993)). In other words, the court will vacate an injunction if it is "broader in scope than that necessary to provide complete relief to the plaintiff" or if an injunction does "not carefully address only the circumstances of the case." Rivenburgh, 317 F.3d at 436.

PBM Products, LLC v. Mead Johnson & Co., 639 F.3d 111, 128 (4th Cir. 2011). Here, the injunctive relief sought by plaintiff is a prohibition on defendant from (1) soliciting, or interfering with any contracts with any AWP's customers or potential customers; (2) using AWP's confidential information; (3) soliciting or inducing any AWP employee to leave AWP and work for a business competitive with AWP. At this point, the court has not determined the appropriate scope of an injunction, if any, to issue in this case. To be sure, if an injunction is issued, the court will be mindful as to the Fourth Circuit's admonition concerning its breadth. AWP has not sought the entry of a preliminary injunction in this case. At this time, therefore, defendants' motion is premature.

### G.

Finally, defendants' argument as regards the recovery of punitive damages and attorneys' fees is likewise unavailing at this stage of the case. Concerning attorneys' fees, the VUTSA allows recovery of attorneys' fees for the bad faith or willful misappropriation of trade secrets, which plaintiff alleges. Va. Code § 59.1-338.1. The business conspiracy statute also provides for the award of reasonable attorneys' fees to a plaintiff who has suffered injury to his reputation, trade, business or profession by reason of violation of the statute. Va. Code § 18.2-500.A. Defendants make little substantive argument concerning punitive damages. In that regard, it is noteworthy that the Virginia Supreme Court recently has held that an award of both punitive damages and treble damages stemming from a VUTSA and a business conspiracy claim were not improper and did not constitute impermissible double recovery. 21st Century Sys., Inc. v. Perot

18

Sys. Gov't Servs., Inc., 284 Va. 32, 47, 726 S.E.2d 236, 243 (2012). In any event, AWP has alleged claims allowing recovery of attorneys' fees, punitive and treble damages consistent with Virginia law. Therefore, there is no basis for dismissing those claims at this time.

Accordingly, defendants' motion to dismiss is **DENIED** in its entirety. An appropriate order will be entered.

Entered: 07-24-2013

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge